**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **JENNIFER C.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **No. 18 C 1243** |
| | ) | |
| **ANDREW M. SAUL,** | ) | **Magistrate Judge Finnegan** |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## ORDER

Plaintiff Jennifer C. seeks to overturn the final decision of the Commissioner of

Social Security ("Commissioner") denying her application for Disability Insurance Benefits

("DIB") under Title II of the Social Security Act. The parties consented to the jurisdiction

of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Plaintiff filed a

brief explaining why the case should be reversed or remanded, and the Commissioner

responded with a competing motion for summary judgment in support of affirming the

decision. After careful review of the record, the Court now grants the Commissioner's

motion.

## BACKGROUND

Plaintiff applied for DIB on April 8, 2011, alleging disability since December 3, 2010

due to ulcerative gastritis, arthritis, stenosis, migraines, degenerative disc disease,

spondylitis, irritable bowel syndrome, fatigue/anemia, possible fibromyalgia,

dizziness/numbness, and colitis. (R. 135, 166). Born in April 1971, Plaintiff was 40 years

old at the time of the application and was considered a younger individual through her

date last insured ("DLI"), December 31, 2015. (R. 135). She has a high school diploma

and worked as an ophthalmic technician from November 1999 to July 2005. (R. 167). Beginning in August 2005, Plaintiff was hired as a special education teacher's aide at an elementary school. She subsequently moved to a similar position at a high school and held that job until December 2010 when she quit due to her impairments. (R. 51-52, 166-67).

The Social Security Administration denied Plaintiff's application at all levels of review, and she appealed to the district court. On August 24, 2016, Magistrate Judge Jeffrey T. Gilbert, presiding by consent, reversed and remanded the case to the Commissioner for further proceedings, finding that the assigned administrative law judge ("ALJ"), Melissa M. Olivero: (1) erred in omitting reference to the opinions of Plaintiff's treating chiropractor, Bruce Burkhart, D.C.; and (2) failed to explain the functional impact of Plaintiff's headaches in determining her residual functional capacity ("RFC"). Judge Gilbert instructed that in addition to rectifying these errors on remand, "the ALJ must reevaluate the intensity and persistence of Claimant's symptoms in light of the Administration's recent Policy Interpretation Ruling regarding the evaluation of symptoms in disability claims." (R. 469-78); *Cummings v. Colvin*, No. 14 C 10180, 2016 WL 4483854 (N.D. Ill. Aug. 24, 2016). On October 28, 2016, the Appeals Council vacated the final decision of the Commissioner and remanded the case to a different ALJ, Kathleen Kadlec, "for further proceedings consistent with the order of the court." (R. 487). The ALJ was instructed to "offer [Plaintiff] the opportunity for a hearing, take any further action needed to complete the administrative record and issue a new decision." (R. 488).

The ALJ held a new hearing on April 25, 2017.[1]  Plaintiff appeared with counsel and provided testimony along with vocational expert Julie Lynn Bose (the "VE").  (R. 357-99).  On November 8, 2017, the ALJ found that Plaintiff's degenerative disc disease of the cervical spine, degenerative disc disease of the lumbar spine, and fibromyalgia were all severe impairments, but they did not meet or equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. 331).  After reviewing the medical and testimonial evidence in detail, the ALJ concluded that Plaintiff was not disabled at any time from her December 3, 2010 alleged onset date through her December 31, 2015 DLI because she retained the RFC to perform her past work as an ophthalmic technician and a teacher's aide, as well as a significant number of other jobs available in the national economy, including housekeeper/cleaner, mail clerk, and office helper.  (R. 331-44).  Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner.

In support of her request for reversal or remand, Plaintiff argues that the ALJ: (1) erred in assessing her ability to handle, feel, and finger with both upper extremities; (2) improperly found her capable of light work; (3) failed to adequately evaluate Dr. Burkhart's opinion as instructed by Judge Gilbert; (4) improperly determined that her migraine headaches are not a severe impairment; and (5) erred in evaluating her subjective statements regarding her symptoms.  For reasons discussed in this opinion, the Court finds that the ALJ's decision is supported by substantial evidence and there are no errors warranting reversal or remand.

---

[1]    Plaintiff had filed a second application for DIB on May 20, 2014, (R. 761), and she appeared with counsel and testified at a hearing relating to that case on July 6, 2016.  (R. 400-38).  The ALJ convened the second hearing in April 2017 after the Appeals Council consolidated both of Plaintiff's cases on remand.  (R. 328, 487).

## DISCUSSION

**A.    Standard of Review**

Judicial review of the Commissioner's final decision is authorized by 42 U.S.C. § 405(g) of the Social Security Act (the "SSA").  In reviewing this decision, the court may not engage in its own analysis of whether Plaintiff is severely impaired as defined by the Social Security regulations.  *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004).  Nor may it "'displace the ALJ's judgment by reconsidering facts or evidence or making credibility determinations.'"  *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010) (quoting *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007)).  The court "will reverse an ALJ's determination only when it is not supported by substantial evidence, meaning 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Pepper v. Colvin*, 712 F.3d 351, 361-62 (7th Cir. 2013) (quoting *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011)).

In making its determination, the court must "look to whether the ALJ built an 'accurate and logical bridge' from the evidence to [his] conclusion that the claimant is not disabled."  *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009) (quoting *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008)).  The ALJ need not, however, "'provide a complete written evaluation of every piece of testimony and evidence.'"  *Pepper*, 712 F.3d at 362 (quoting *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (internal citations and quotation marks omitted)).  Where the Commissioner's decision "'lacks evidentiary support or is so poorly articulated as to prevent meaningful review,' a remand is required."  *Hopgood ex rel. L.G. v. Astrue*, 578 F.3d 696, 698 (7th Cir. 2009) (quoting *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002)).

**B.     Five-Step Inquiry**

To recover disability benefits under the SSA, a claimant must establish that she is disabled within the meaning of the SSA. *Snedden v. Colvin*, No. 14 C 9038, 2016 WL 792301, at *6 (N.D. Ill. Feb. 29, 2016). A claimant is disabled if she is unable to perform "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to law for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). In determining whether a claimant suffers from a disability, an ALJ must conduct a standard five-step inquiry, which involves analyzing: "(1) whether the claimant is currently employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling; (4) if the claimant does not have a conclusively disabling impairment, whether [s]he can perform her past relevant work; and (5) whether the claimant is capable of performing any work in the national economy." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012) (citing 20 C.F.R. § 404.1520). If the claimant meets her burden of proof at steps one through four, the burden shifts to the Commissioner at step five. *Moore v. Astrue*, 851 F. Supp. 2d 1131, 1139-40 (N.D. Ill. 2012).

**C.     Analysis**

**1.     Ability to Handle, Feel, and Finger**

Plaintiff first argues that the case must be reversed or remanded because the RFC does not properly account for her difficulties with handling, feeling, and fingering. A claimant's RFC is the maximum work that she can perform despite any limitations. *See* 20 C.F.R. § 404.1545(a)(1); SSR 96-8p, at *1-2. "Although the responsibility for the RFC

assessment belongs to the ALJ, not a physician, an ALJ cannot construct his own RFC finding without a proper medical ground and must explain how he has reached his conclusions." *Amey v. Astrue*, No. 09 C 2712, 2012 WL 366522, at *13 (N.D. Ill. Feb. 2, 2012).

In the bold-faced recitation of Plaintiff's functional abilities, the ALJ restricted Plaintiff to frequent operation of hand controls and imposed no other manipulative limitations, stating: "The claimant could handle, finger and feel with her upper extremities bilaterally." (R. 331). In the narrative portion of the decision, however, the ALJ stated that she was limiting Plaintiff to "work that only requires her to operate hand controls frequently and handle, finger and feel *on a frequent basis*." (R. 340) (emphasis added). In the next paragraph, the ALJ reiterated that Plaintiff could only perform work requiring her to "handle, finger and feel *frequently* and only frequently operate hand controls." (*Id.*) (emphasis added). Based on this discrepancy, Plaintiff assumes that the ALJ "intended to find no [manipulative] restrictions" and argues that "no doctor opined to that finding." (Doc. 10, at 6-7 and n.2; Doc. 19, at 2). As a preliminary matter, State agency reviewer Vidya Madala, M.D., concluded on April 16, 2015 that Plaintiff was "unlimited" in her ability to handle, finger, and feel, so at least one physician of record "opined to that finding." (R. 514).

Regardless, the Court agrees with the Commissioner that read as a whole, the ALJ's decision reflects an intent to limit Plaintiff to frequent hand manipulations. In addition to stating this expressly on two occasions, the ALJ also included the limitation in her hypothetical questions to the VE. (R. 391). Indeed, not one of the hypothetical questions asked the VE to consider a person with unlimited hand functioning. Moreover,

the VE testified that a person who could perform frequent hand manipulations would be capable of doing Plaintiff's prior work as an ophthalmic technician and a teacher's aide, as well as a significant number of other jobs available in the national economy. (R. 391-92). This is exactly what the ALJ found. (R. 342-43).

Plaintiff insists that remand is still appropriate because the ALJ failed to resolve a "material conflict" between Dr. Madala's opinion that Plaintiff had no hand limitations, and an earlier September 2014 opinion from State agency reviewer Bharati Jhaveri, M.D., that Plaintiff was limited to "frequent fine/gross manipulations with bilateral hands." (R. 499). Plaintiff's argument is once again based on the flawed premise that the ALJ adopted Dr. Madala's less restrictive hand limitations and somehow ignored Dr. Jhaveri's opinion. (Doc. 19, at 2-3). In fact, the ALJ specifically discussed both State agency opinions and then incorporated the *more* restrictive of the hand limitations into the RFC. (R. 336, 338, 340). *Cf. Ellis v. Astrue*, Civil No. 2:10-CV-452, 2012 WL 359305, at *9-10 (N.D. Ind. Feb. 2, 2012) (ALJ erred in adopting *less* restrictive of two medical opinions without providing adequate explanation). Plaintiff is correct that the ALJ made a mistake at one point in the decision by indicating that no State agency reviewer had found any manipulative limitations. (Doc. 19, at 5; R. 340). But since the ALJ ultimately adopted a limitation to frequent handling, fingering, and feeling as set forth in Dr. Jhaveri's opinion, the ALJ's error is harmless and does not support a remand. *See Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010) (reaffirming that harmless error applies to social security cases).

Plaintiff disagrees, noting that her treating family medical doctor Michael J. Lynch, D.O., opined in August 2013 that she could only grasp, turn, and twist objects for 50% of an 8-hour workday, and perform fine manipulations for 25% of an 8-hour workday. (Doc.

10, at 7; R. 323). A treating source opinion is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. 20 C.F.R. §§ 404.1527(c)(2); *see Minnick v. Colvin*, 775 F.3d 929, 938 (7th Cir. 2015); *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). If the opinion is contradicted by other evidence or is internally inconsistent, the ALJ may discount it so long as she provides an adequate explanation for doing so. *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011); *Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010); *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007). That is to say, the ALJ must offer "good reasons" for discounting a treating physician's opinion, *Scott*, 647 F.3d at 739, and then determine what weight to give it considering (1) the length of the treatment relationship and frequency of examination, (2) the nature and extent of the treatment relationship, (3) the degree to which the opinion is supported by medical signs and laboratory findings, (4) the consistency of the opinion with the record as a whole, (5) whether the opinion was from a specialist, and (6) other factors brought to the attention of the ALJ. 20 C.F.R. § 404.1527(c)(2)-(6); *see Simila*, 573 F.3d at 515.

The ALJ gave Dr. Lynch's opinion "little weight" because it was "inconsistent with his own treatment notes and the other clinical exams in the record." (R. 339). Dr. Lynch examined Plaintiff on May 17, 2012 for a sinus infection and did not identify any other abnormalities, either in her hands or otherwise. (R. 334, 1050, 1052). Plaintiff likewise exhibited no hand problems when she followed up with Dr. Lynch on May 24, 2012, February 12, 2013, August 29, 2013, January 31, 2014, February 5, 2014, June 6, 2014, June 18, 2014, and August 14, 2014. (R. 334, 1053-56, 1207-19, 1221-27, 1228-31).

Moreover, Dr. Lynch completed a second medical source statement on August 25, 2014 and this time did not note any specific problems in Plaintiff's ability to use her hands for tasks involving fine or gross manipulation. (R. 336, 1202). Plaintiff does not argue that the ALJ erred in assigning little weight to Dr. Lynch's August 2013 opinion, or address the many records showing normal hand functioning. On this record, Dr. Lynch's findings do not support reversing the ALJ's decision for further analysis of Plaintiff's ability to handle, finger, and feel.

Viewing the evidence as a whole, the ALJ's decision to limit Plaintiff to frequent use of her hands is supported by substantial evidence.

### 2. Light Work

Plaintiff next argues that ALJ Kadlec erred in finding her capable of performing light work when ALJ Olivero found in the earlier June 13, 2012 decision that Plaintiff was capable of only sedentary work. (Doc. 10, at 10; Doc. 19, at 5-6). In support of this assertion, Plaintiff first references unspecified "other care" she received which purportedly shows that her impairments have "only gotten more severe since 2012." (Doc. 10, at 9; Doc. 19, at 6). This Court is not required to scour through the record to try and find treatment notes that back up Plaintiff's argument. As the Seventh Circuit has "cautioned time and again, '[j]udges are not like pigs, hunting for truffles buried in [the record].'" *Friend v. Valley View Comm. Unit Sch. Dist. 365U*, 789 F.3d 707, 711 (7th Cir. 2015) (quoting *U.S. v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)).

Plaintiff also cites to a single January 28, 2015 treatment note from Jeffrey C. Curtin, D.O., stating that she underwent an occipital nerve block. (Doc. 10, at 9; Doc. 19, at 5-6; R. 1343). Since the nerve block was for headache relief, it is not clear how this

undermines the ALJ's conclusion that Plaintiff could perform light work. Plaintiff provides no argument or explanation in that regard. *See Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016) ("[P]erfunctory and undeveloped arguments . . . are waived."). Nor does Plaintiff address any of the evidence the ALJ relied on in limiting her to light work, such as examinations consistently showing normal gait and normal range of motion; normal or mild results on lung function, chest, and imaging tests; and opinions from State agency reviewers that Plaintiff can perform light work. (*See, e.g.*, R. 282, 290-91, 294, 305, 334-40, 497-98, 532, 1126-27, 1188, 1201, 1212, 1223, 1266, 1306, 1471).

The mere fact that ALJ Olivero reached a different conclusion than ALJ Kadlec, standing alone, is not evidence that ALJ Kadlec committed reversible error. ALJ Kadlec was not bound by ALJ Olivero's decision but was authorized and expected to reevaluate all the evidence on remand, including new evidence received in connection with the May 2014 application. The ALJ fully complied with this duty. *Cf. Barton v. Berryhill*, Case No. 1:16-CV-3219-DML-TWP, 2018 WL 1391366, at *4 (S.D. Ind. Mar. 20, 2018) (remanding where second ALJ "never mentioned" an important medical opinion that a prior ALJ had relied on and discussed extensively in awarding the plaintiff child disability benefits). Notably, the VE testified that there would be a significant number of jobs available to someone with Plaintiff's background even at the sedentary level, including document preparer, addresser, and call out operator. (R. 394).

On the record presented, and given Plaintiff's cursory arguments, this Court sees no basis to remand the case for further evaluation of Plaintiff's ability to engage in light work.

### 3.     Dr. Burkhart's Opinion

Plaintiff next argues the ALJ violated the law of the case doctrine when she gave no weight to Dr. Burkhart's opinion that Plaintiff is disabled.  The law of the case doctrine "requires the administrative agency, on remand from a court, to conform its further proceedings in the case to the principles set forth in the judicial decision unless there is a compelling reason to depart."  *Wilder v. Apfel*, 153 F.3d 799, 803 (7th Cir. 1998).  In the first decision from June 13, 2012, ALJ Olivero made a single reference to Dr. Burkhart as follows:  "The claimant went to a chiropractor for her complaints in late 2010 and 2011.  She reported that her neck/scalp was very tight."  (R. 31).  On appeal, Judge Gilbert determined that this cursory statement, which failed to mention many of Dr. Burkhart's findings, did not satisfy the ALJ's duty to weigh all opinions of record, even those from a non-acceptable medical source such as a chiropractor (also referred to as an "other medical source").  *Cummings*, 2016 WL 4483854, at *3.  Though ALJs have more discretion in weighing opinions from other medical sources, they must still consider "the length, nature, and extent of the treatment relationship; the frequency of examination; the types of tests, if any, performed; and the consistency and supportability of the opinion."  *Id.* (citing SSR 06-03p; *Scott*, 647 F.3d at 741).  Judge Gilbert determined that the ALJ's failure to do so warranted remand.  *Id.*

On remand, ALJ Kadlec acknowledged her responsibility to consider and weigh Dr. Burkhart's opinion, (R. 328), and provided a thorough discussion of his findings.  The ALJ cited treatment notes from December 2010 indicating that Dr. Burkhart had performed myofascial release techniques on Plaintiff on several occasions to help alleviate her neck pain and leg cramping.  (R. 234-35, 238, 333).  The ALJ also discussed

Dr. Burkhart's February 8 and April 7, 2011 opinions that Plaintiff had been unable to work since December 15, 2010 due to neck pain, headaches, and low back pain with radiating bilateral leg pain. (R. 230-31, 333). Finally, the ALJ addressed Dr. Burkhart's last treatment note from April 14, 2011, which documented reduced range of motion in Plaintiff's cervical and lumbar spine with no neurological abnormalities. (R. 237, 333).

In assigning Dr. Burkhart's opinion no weight, the ALJ discussed the length, nature, and extent of the treatment relationship, noting it began in late 2010, lasted into 2011, and involved myofascial release techniques. (R. 333). The ALJ also stressed that Dr. Burkhart never saw Plaintiff again after 2011 and so would not have any knowledge of her condition from at least 2012 onward. (R. 339). On the issues of consistency and supportability, the ALJ noted that Dr. Burkhart's opinion regarding disability conflicted with neurological testing showing no abnormalities in the cervical and lumbar spine. (R. 333). This analysis fully comports with the requirements of SSR 06-03p. Plaintiff's objection that the ALJ failed to weigh Dr. Burkhart's opinion "in line with the appropriate regulatory factors" because she deemed him to be an unacceptable medical source is incorrect and so rejected. (Doc. 10, at 11; Doc. 19, at 7).

This Court likewise declines to remand the case based on the ALJ's observation that there was "no indication" in December 2010 treatment notes that Dr. Burkhart "examined" Plaintiff. (R. 333). Plaintiff argues that this statement is false because Dr. Burkhart "treated" her with myofascial release techniques. (Doc. 10, at 12; Doc. 19, at 7). Assuming for the sake of argument that performing myofascial release techniques is equivalent to conducting a medical *examination*, the ALJ acknowledged later in the

decision that Dr. Burkhart "treated [Plaintiff] prior to her [December 31, 2015] date last insured." (R. 339). This suffices to cure and render harmless any earlier misstatement.

Plaintiff finally faults the ALJ for rejecting Dr. Burkhart's conclusion that Plaintiff has been "disabled" since December 15, 2010. (Doc. 10, at 11-12; Doc. 19, at 7). It is true that courts have cautioned against ignoring a medical source's opinion merely because he was opining on an issue reserved to the Commissioner. *See, e.g., Samuel v. Berryhill*, No. 17 C 4596, 2018 WL 1706370, at *7 (N.D. Ill. Apr. 9, 2018) (citing *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012)) ("[T]he fact that Dr. Elias expressed an opinion on the ultimate issue is not a valid reason to discount his opinions."). That is not what occurred here. As stated, the ALJ fairly considered all aspects of Dr. Burkhart's opinion, evaluated it under SSR 06-03p, and provided valid reasons for discounting it.

To recap, the ALJ fully complied with Judge Gilbert's order to evaluate Dr. Burkhart's opinion on remand, and her decision to afford it no weight is supported by substantial evidence. Plaintiff's request for remand on this issue is denied.

### 4. Headaches

In a related argument, Plaintiff contends the ALJ violated the law of the case doctrine in assessing her headaches. ALJ Olivero found in her June 13, 2012 decision that Plaintiff's headaches were a severe impairment, but she did not provide any explanation for that conclusion or cite to supporting medical records. (R. 29). Nor did ALJ Olivero explain how she accounted for the headaches in the RFC assessment. In fact, the only time ALJ Olivero mentioned medical evidence relating to headaches was when she noted that consultative examiner M.S. Patil, M.D., diagnosed Plaintiff with a "history of migraine headaches" in June 2011. (R. 31, 279-80). Judge Gilbert remanded

the case to address which, if any, of the RFC restrictions were "meant to reflect the impairment caused by Claimant's headaches." *Cummings*, 2016 WL 4483854, at *4. As Judge Gilbert explained, "by referring to Claimant's headaches as a 'severe impairment' without clearly indicating what limitations they impose, the ALJ has left an impermissible gap in her reasoning, which must be filled in on remand." *Id.*

On remand, ALJ Kadlec determined that Plaintiff's headaches were not a severe impairment after all. (R. 331). Plaintiff argues that this decision violates the law of the case doctrine because the ALJ was only supposed to articulate how Plaintiff's headaches factored into the RFC, and not reconsider the question of severity. (Doc. 10, at 13; Doc. 19, at 8). This Court disagrees. The primary problem with ALJ Olivero's decision was that it ignored nearly all of the medical and testimonial evidence relating to Plaintiff's headaches. ALJ Olivero provided no explanation for why Plaintiff's headaches were a severe impairment at step 2 of the sequential analysis, and no indication that she considered the headaches in determining Plaintiff's RFC. As a result, Judge Gilbert was unable to find a logical bridge between those two aspects of the ALJ's decision. *Cummings*, 2016 WL 4483854, at *4. To rectify this error on remand, ALJ Kadlec needed to address all of the relevant evidence and explain how it supported her findings at each step of the sequential analysis. Nothing in the district court's opinion required ALJ Kadlec to presume that Plaintiff's headaches were in fact severe. *Compare Ambelang v. Berryhill*, No. 15-CV-wmc, 2017 WL 1929673 (W.D. Wis. May 10, 2017) (second remand necessary where the district court directed the ALJ to reconsider how a limitation to simple work with only brief and superficial interactions with coworkers accommodated the plaintiff's moderate limitations in concentration, persistence, and dealing with supervisors,

but the ALJ instead concluded that the plaintiff's bipolar disorder was not a severe mental impairment).

In a similar vein, Plaintiff objects that the ALJ failed to adequately explain why her headaches were severe in 2012 "but were no longer so as of her date last insured." (Doc. 10, at 12; Doc. 19, at 8). As stated, however, the ALJ was not required to accept that Plaintiff's headaches were severe in 2012 and then explain how the symptoms had abated. Rather, the ALJ was authorized and expected to consider all the evidence concerning Plaintiff's headaches and ensure that the step 2 finding of severity was consistent with the limitations set forth in the RFC. Recognizing that obligation, the ALJ provided a thorough discussion of the medical documents and testimony found in the record. (R. 333-41). The treatment notes show that between June 2009 and February 2014, Plaintiff only complained to her doctors about headaches on 3 occasions: June 1, 2010, May 17, 2012, and January 31, 2014. (R. 221, 333-35, 1050, 1221). Plaintiff received additional headache treatment on several occasions between June 2014 and March 2015, including an occipital nerve block in January 2015. Plaintiff then said nothing about headaches when she saw her treating family medical physician Dr. Lynch on March 9, 2015, and the record contains no further headache-related treatment notes after that date. (R. 336, 338, 1210, 1213, 1475-77).

Plaintiff does not mention any of this evidence or explain how it supports her claims of severe, disabling headaches that purportedly cause nausea and require her to lay down for hours at a time multiple times per week. Instead, Plaintiff focuses on the fact that Dr. Jhaveri and Dr. Madala both opined that her migraines constitute a severe impairment for purposes of step 2 of the sequential analysis. (R. 495, 530). As an initial

matter, the ALJ gave those opinions little weight and Plaintiff does not challenge that aspect of the decision. *Goffron v. Astrue*, 859 F. Supp. 2d 948, 958 (N.D. Ill. 2012) ("Arguments not raised are waived."). Moreover, the only functional limitations the State agency physicians imposed to address Plaintiff's migraines were environmental in nature: avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and hazards. (R. 499-500, 515). Since Plaintiff testified that she does not believe these cause her any problems, the State agency reviewers' findings of severity do not support remanding the case. (R. 340, 374).

For similar reasons, Plaintiff's reliance on Dr. Lynch's opinion that she has disabling migraines is equally misplaced. The ALJ gave that opinion little weight because it was inconsistent with the doctor's treatment notes and there was "no indication in the record that they occurred as frequently as Dr. Lynch's opinion would suggest." (R. 339). Plaintiff does not argue that the ALJ erred in weighing Dr. Lynch's opinion or cite to any specific treatment records indicating that her headaches cause disabling limitations.

All that remains is Plaintiff's own statements regarding the limiting effects of her migraines, which the ALJ reasonably discredited for several reasons. For example, Plaintiff refused a referral to a headache clinic in June 2014 despite claiming she was experiencing debilitating headaches multiple times a week. She also stopped treating with a new physician in December 2014 while she was in the midst of trying a new headache medication. (R. 340, 341, 1213). Furthermore, there is no evidence that she maintained a headache journal as Dr. Lynch instructed on at least two occasions. (R. 335, 336, 339, 1213, 1216). Notably, Plaintiff did not claim she was unable to afford treatment and confirmed she had insurance through December 31, 2015. (R. 406). *See*

*Purifoy v. Colvin*, No. 13 C 6617, 2015 WL 2448281, at *8 (N.D. Ill. May 21, 2015) ("Without an alternative explanation for Plaintiff's failure to comply with medical advice, the ALJ did not err in concluding that her lack of follow through undermined her allegations of disability.").

The ALJ also found it significant that Plaintiff declined to pursue Botox injections. (R. 340, 341). Plaintiff says she was afraid of the side effects, (R. 369-70), but given her refusal to pursue other treatment options as well, the overall record suggests her symptoms did not interfere with her functional abilities as much as she claimed. In fact, Plaintiff testified at the July 2016 hearing that she was "on a hiatus" from all medical treatment and was no longer taking any medications for her headaches or otherwise. (R. 341, 405-06). Plaintiff suggested she had a problem with insurance but there is no evidence she sought out low cost or free medical care. (R. 341, 405-06). At the April 2017 hearing, Plaintiff testified she was once again receiving treatment but the only medical record she submitted was a February 23, 2016 X-ray showing mild scoliosis. (R. 341, 1479). The ALJ reasonably concluded that Plaintiff's ability to forego headache treatment for months on end undermined her claims of disabling headache pain.

The ALJ did make one error in discounting Plaintiff's headaches by relying on the fact that "none of the imaging of [Plaintiff's] brain showed any abnormalities," including a December 2014 MRI. (R. 340, 341, 1467-68). As the Seventh Circuit has explained, "[d]octors use MRIs to *rule out other possible causes of headache* – such as a tumor – meaning that an unremarkable MRI is completely consistent with a migraine diagnosis." *Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014) (emphasis in original). Regardless, "[o]ne flaw – or more – does not render a credibility determination patently wrong as long

as the ALJ provides other valid reasons for her conclusion." *Esters v. Colvin*, No. 12 C 3695, 2014 WL 2199283, at *6 (N.D. Ill. May 27, 2014). The ALJ provided several valid reasons for rejecting Plaintiff's headache complaints, and Plaintiff's failure to acknowledge or address them supports affirming the ALJ's decision.

Viewing the record as a whole, the ALJ did not commit reversible error when she concluded that Plaintiff's headaches are not a severe impairment and do not impose more than minimal limitations on her functional abilities. Plaintiff's request for remand on this basis is denied.

### 5. Plaintiff's Subjective Statements

Plaintiff finally argues that the ALJ erred in evaluating her subjective statements regarding pain. The regulations describe a two-step process for evaluating a claimant's own description of her impairments. First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms, such as pain." SSR 16-3p, at *2. If there is such an impairment, the ALJ must "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." *Id.* In evaluating a claimant's symptoms, "an ALJ must consider several factors, including the claimant's daily activities, her level of pain or symptoms, aggravating factors, medication, treatment, and limitations, . . . and justify the finding with specific reasons." *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

The Court is to give the ALJ's assessment of a claimant's subjective symptom allegations "special deference and will overturn it only if it is patently wrong," i.e., if it "lacks

any explanation or support." *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017) (internal quotations omitted); *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). A reviewing court should rarely disturb a subjective symptom assessment, as it lacks "the opportunity to observe the claimant testifying." *Sims v. Barnhart*, 442 F.3d 536, 538 (7th Cir. 2006). The claimant bears the burden of showing that an ALJ's subjective symptom evaluation is "patently wrong." *See Horr v. Berryhill*, 743 F. App'x 16, 20 (7th Cir. 2018).

Plaintiff first argues that the ALJ applied the wrong legal standard in evaluating her symptoms. Specifically, the ALJ began by reciting the following boilerplate language: Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (R. 332). The Court agrees that such boilerplate is meaningless, but it is also "innocuous when, as here, the language is followed by an explanation for rejecting the claimant's testimony." *Schomas v. Colvin*, 732 F.3d 702, 708 (7th Cir. 2013). *See also Dawn P. v. Berryhill*, No. 17 C 4707, 2019 WL 339603, at *4 (N.D. Ill. Jan. 28, 2019) (use of "not entirely consistent" boilerplate language does not alone warrant reversal if "the ALJ proceeded to give reasons explaining her ultimate finding."); *Esther C. v. Berryhill*, No. 18 C 407, 2019 WL 1254888, at *2 (N.D. Ill. Mar. 19, 2019) (quoting *Pierce v. Colvin*, 739 F.3d 1046, 1050 (7th Cir. 2014)) (same boilerplate language "not fatal if it is accompanied by 'a detailed explanation of the evidence and [the ALJ's] reasoning about credibility.'"). *But see Minger v. Berryhill*, 307 F. Supp. 3d 865, 871-72 (N.D. Ill. 2018) (expressing concern that the same boilerplate language may indicate the ALJ was applying the wrong evidentiary standard).

Turning to the substantive analysis, Plaintiff argues that the ALJ improperly equated her ability to perform daily activities with an ability to work a full-time job. (Doc. 10, at 15) (citing *Gentle v. Barnhart*, 430 F.3d 865, 867 (7th Cir. 2005)) (cautioning that "the administrative law judge's casual equating of household work to work in the labor market cannot stand."). On the contrary, the ALJ merely stated that Plaintiff's daily activities reflect a greater functional ability than Plaintiff claims. (R. 341). This is entirely proper. *See Egly v. Berryhill*, 746 F. App'x 550, 555 (7th Cir. 2018) (affirming decision concerning the plaintiff's subjective statements where "the ALJ properly considered [the plaintiff's] activities in concluding that his testimony was exaggerated."); *Higdon v. Berryhill*, No. 3:18-CV-047-JD, 2018 WL 5801403, at *4 (N.D. Ind. Nov. 6, 2018) ("Activities of daily living are a proper consideration for an ALJ to weigh in evaluating the credibility of a claimant's complaints.").

Plaintiff responds that her real argument is that the ALJ failed to consider "qualifications on her daily activities." (Doc. 19, at 11). The Seventh Circuit has "repeatedly emphasized that an ALJ is supposed to consider a claimant's limitations in performing household activities." *Schreiber v. Colvin*, 519 F. App'x 951, 961 (7th Cir. 2013) (citing *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009)). Plaintiff argues the ALJ overlooked her testimony that she had problems writing, filling out forms, using zippers, whisking during cooking, concentrating, getting dressed, showering, bending, reaching overhead, and opening jars. (Doc. 10, at 15; Doc. 19, at 11). It is true the ALJ did not specifically mention all of these individual tasks, but she did affirmatively note Plaintiff's complaints about hand cramping and neck and shoulder pain, and she accommodated those difficulties by limiting Plaintiff to only frequent handling, fingering, and feeling, and

frequent operation of hand controls. (R. 332, 340). On this record, the ALJ did not err in discussing Plaintiff's activities of daily living.

Plaintiff finally argues that the ALJ improperly questioned the validity of her allegations based on her smoking habit. (Doc. 10, at 16; Doc. 19, at 12). Plaintiff claims there is no evidence linking her smoking to her pain so it "cannot be used as evidence of non-compliance and a basis to find [her] incredible." (Doc. 19, at 12) (citing *Shramek v. Apfel*, 226 F.3d 809, 813 (7th Cir. 2000) (criticizing the failure to stop smoking as "an unreliable basis on which to rest a credibility determination.").

There is no dispute that Plaintiff's doctors repeatedly admonished her to stop smoking to help with chest pain, difficulty breathing and other problems. (*See, e.g.*, R. 222, 6/1/2010 note from Yasemin Ozcan, M.D., counseling Plaintiff on smoking cessation; R. 1007, 11/17/2011 chest X-ray taken due to shortness of breath; R. 1014, 8/29/2013 opinion from Dr. Lynch that Plaintiff suffers from "breathlessness"; R. 1238, 9/6/2013 chest X-ray due to dyspnea; R. 1221, 1/31/2014 note from Dr. Lynch that Plaintiff gets winded a lot, is hoarse, has shortness of breath, and cannot quit smoking; R. 1236, 1/31/2014 chest X-ray taken due to shortness of breath, difficulty speaking for a year; R. 1217 and 1219, 5/5/2014 note from Dr. Lynch stating Plaintiff was hoarse and wheezing and trying to quit smoking; R. 1406, 6/26/2014 note from pulmonologist Rohinee Beri, M.D., stating Plaintiff "does not want to use Chantix, zyban, or nicotine supplements to help her quit [smoking]"; R. 1207, 8/14/2014 note from Dr. Lynch stating Plaintiff "received [smoking] cessation intervention"; R. 1246, 4/10/2014 note from B.P. Farrell, M.D., stating Plaintiff was "winded" and he discussed importance of quitting smoking; R. 1243, 8/27/2014 note from Dr. Farrell stating Plaintiff has early COPD and was strongly

encouraged to quit smoking). This distinguishes the case from *Shramek* where "no medical evidence directly linked" smoking to the plaintiff's impairments. 226 F.3d at 813.

Regardless, the smoking observation was a small part of the ALJ's decision to discount Plaintiff's subjective statements, along with all the medical records that belied her claims and her failure to follow prescribed treatment. Any error the ALJ may have made in mentioning Plaintiff's smoking thus does not require reversal. *See Carroll v. Barnhart*, 291 F. Supp. 2d 783, 796 (N.D. Ill. 2003) (finding that "the ALJ's reliance on Claimant's smoking habits had no effect on Claimant's disability determination, and thus does not justify a reversal.").

Viewing the record as a whole, the ALJ's evaluation of Plaintiff's subjective statements regarding her symptoms is supported by substantial evidence.

## CONCLUSION

For the reasons stated above, Plaintiff's request to remand the case is denied, and the Commissioner's motion for summary judgment [17] is granted. The Clerk is directed to enter judgment in favor of the Commissioner.

ENTER:

Dated: September 12, 2019

SHEILA FINNEGAN
United States Magistrate Judge